IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD G. KIRBY,

       Petitioner,

v.                                           CIV 08-886 MV/CG

GARY K. KING, Attorney General
for the State of New Mexico,

       Respondent.

## PROPOSED FINDINGS
## &
## RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Richard Kirby's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Doc. 1), Respondent's *Answer* (Doc. 11), Petitioner's *Reply* (Doc. 12) and the transcripts, tapes, and documents from the state court proceedings (*See* Doc. 11, Exs. A-LLL). All of the issues can be resolved on the record before me, and, therefore, an evidentiary hearing is unnecessary. *E.g., Schriro v. Landrigan,* 550 U.S. 465, 475 (2007); *Sandoval v. Ulibarri,* 548 F.3d 902, 915-16 (10th Cir. 2008), *cert. denied,* 130 S. Ct. 133 (2009); Rule 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS. Accordingly, for the reasons set forth below, **THE COURT RECOMMENDS** that the petition be **DENIED WITH PREJUDICE**.

# I.  Procedural History

Mr. Kirby's Petition challenges his conviction in state court action D-307-CR-200100773.  Mr. Kirby's first trial resulted in a mistrial. At Mr. Kirby's second trial, the government proceeded on two counts of fraud by worthless check to Adventure Travel, a company owned and run by Wanda and William Mattiace. *See Record Proper* at 230-34; *Trial Transcript 5/18/04* at 4. Mr. Kirby was accused of buying two sets of airline tickets from Adventure Travel while paying for them with checks he knew to be worthless. The jury convicted Petitioner on one count and acquitted him on the other count.  Petitioner was sentenced to a total of five years imprisonment followed by one year of parole. *See Record Proper* at 242-44, 267, 270-73. Petitioner was released from parole supervision in August 2010.  Because he was "in custody" when he filed his federal petition, and because of the potential "collateral consequences" arising from the conviction, this matter is properly before this Court.  (*See* Doc. 40; Doc. 40-1; Doc. 42; Doc. 44).

The Tenth Circuit has already determined that several of Petitioner's claims - namely those concerning his sentence enhancement, restitution, and bond - are either noncognizable or are moot.  *See Kirby,* 379 Fed. App'x at 783-84 & n.2. Therefore, this Court will not address those claims. Petitioner has six remaining interrelated claims before this Court. *(Id.* at 784; Doc. 13 at 2). Petitioner's claims will be addressed by topic.

# II.  STANDARDS OF REVIEW

Because Mr. Kirby filed the instant Petition *pro se*, this Court must construe his pleadings liberally. *See e.g.*, *Haines v. Kerner,* 404 U.S. 519, 520-21(1972) (per curiam); *Hall v. Bellmon,* 935 F.2d 1106, 1110 & n. 3 (10th Cir. 1991).

The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') sets forth the relevant standards by which a federal court will consider a state prisoner's habeas challenge. Because Petitioner filed after the effective date of the AEDPA, its standards apply to this case. As the Tenth Circuit recently reiterated, under AEDPA standards,

> [i]f a claim was addressed on the merits by the state courts, we may not grant federal habeas relief on the basis of that claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "When reviewing a state court's application of federal law, we are precluded from issuing the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." *McLuckie v. Abbott,* 337 F.3d 1193, 1197 (10th Cir. 2003). "Rather, we must be convinced that the application was also objectively unreasonable." *Id.* "This standard does not require our abject deference, but nonetheless prohibits us from substituting our own judgment for that of the state court." *Snow,* 474 F.3d at 696 (internal quotation marks and citation omitted).
>
> If a claim was not resolved by the state courts on the merits and is not otherwise procedurally barred, our standard of review is more searching. That is, . . . § 2254(d)'s deferential standards of review do not apply in such circumstances . . .

*Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010), *cert. denied,* 2010 WL 3337627 (11/1/10).

Clearly established Supreme Court precedent is "dispositive" for the purposes of § 2254(d)(1). *Fairchild v. Workman,* 579 F.3d 1134, 1139 (10th Cir. 2009). To determine

whether the law is "clearly established," federal habeas courts "may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *Lambert v. Workman,* 594 F.3d 1260, 1263 (10th Cir. 2010).

> [If a petitioner] has not cited, nor have we found, any Supreme Court authority clearly establishing the. . . principles at issue here[,] [u]nder the AEDPA standards set out above, that is fatal to his claim.  Unless and until the Supreme Court decides [the issue] habeas relief on this basis is unavailable, and it is not the province of this court to resolve the issue . . .

*Id.*

# III.  Analysis

## A.  Sufficiency Of The Evidence

Petitioner's primary contention is that the evidence introduced at trial was insufficient to support a conviction.  Third Judicial District Judge Douglas Driggers denied Mr. Kirby's state habeas petition under the mistaken assumption that sufficiency of the evidence claims were not cognizable under habeas corpus.[1]  Judge Driggers failed to follow or consider *Jackson v. Virginia*, where the Supreme Court set forth the clearly established law for evaluating sufficiency of the evidence claims.  *See, e.g., Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Alverson v. Workman,* 595 F.3d 1142, 1157 (10th Cir. 2010).  While a state court may fail to cite *Jackson,* the decision is nonetheless entitled to AEDPA deference if

---

[1] Judge Driggers dismissed Petitioner's sufficiency claims, stating "[a] claim of insufficiency of evidence is generally not available in habeas corpus.  *Woods v. State,* 84 N.M. 248, 501 P.2d 692 (N.M. Ct. App. 1972)." *Doc. 11-5* at 39-40. Notwithstanding Judge Drigger's assertion to the contrary, sufficiency of the evidence claims are cognizable in federal habeas proceedings and are routinely presented in habeas petitions. *See, e.g.*, *Gonzales v. Tafoya*, 515 F.3d 1097, (10th Cir. 2008);  *Evans v. Court of Common Pleas*, 959 F.2d 1227 (3d Cir. 1992); *Strogov v. Attorney Gen.*, 191 F.3d 188 (2d Cir. 1999).

the state court applies the correct standards.[2]   Because Judge Driggers did not follow *Jackson*, this Court will review the issue *de novo.*

Under *Jackson,* "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt."  443 U.S. at 319 (emphasis in original).  This review is based on a review of "all of the evidence . . . [taken] in the light most favorable to the prosecution." *Id.* (same).  The scope of the review is very limited. This Court cannot weigh conflicting evidence or assess the credibility of witness. *E.g., Valdez v. Bravo,* 373 F.3d 1093, 1097 (10th Cir. 2004).  When "faced with a record of historical facts that supports conflicting inferences," a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *Jackson,* 443 U.S. at 326.

To apply *Jackson,* this Court looks to "New Mexico law to determine the substantive elements of the relevant criminal offense." *Valdez,* 373 F.3d at 1097.  Here, Petitioner was charged with "fraud by worthless check" in violation of "§ 30-36-4," which provides that

> it is unlawful for a person to issue in exchange for anything of value, with intent to defraud, any check, draft or order for payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has insufficient funds in or credit with the bank or depository for the payment of such check, draft or order in full upon its presentation.

N.M. Stat. Ann. § 30-36-4 (1978).   The jury instructions precisely mirrored the five-

---

[2]  *See Matthews v. Workman,* 577 F.3d 1175, 1183 n.2 (10th Cir. 2009) ("Though the OCCA did not cite *Jackson,* it [applied] a formulation identical to *Jackson*'s.") (internal quotations and citations omitted); *Valdez v. Bravo,* 373 F.3d 1093, 1096 n.1 (10th Cir. 2004) ("Although the New Mexico Court of Appeals did not cite to *Jackson,* the sufficiency of the evidence standard it applied was identical to the Supreme Court's formulation.").

element format and language of Uniform Jury Instruction 14-1670 – the New Mexico

criminal instruction for "Fraud By Worthless Check."  *See* N.M. RULES ANN.-CRIM UJI 14-

1670.  That is:

> INSTRUCTION NO.:  3
>
> For you to find the defendant guilty of fraud by worthless check as charged in Count 1, the state must prove to you satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.  The defendant gave a check for $658.00 to Adventure Travel;
>
> 2.  Adventure Travel gave an airplane ticket or tickets which had some value for the check;
>
> 3.  When the defendant gave the check, he knew that there would be neither sufficient funds nor credit for payment of the check in full;
>
> 4.  The defendant intended to cheat or deceive Adventure Travel or another by use of the check;
>
> 5.  This happened in New Mexico on or about 23rd day of November, 1999.
>
> INSTRUCTION NO.:  4
>
> For you to find the defendant guilty of fraud by worthless check as charged in Count 2, the state must prove to you satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.  The defendant gave a check for $733.00 to Adventure Travel;
>
> 2.  Adventure Travel gave an airplane ticket or tickets which had some value for the check;
>
> 3.  When the defendant gave the check, he knew that there would be neither sufficient funds nor credit for payment of the check in full;
>
> 4.  The defendant intended to cheat or deceive Adventure Travel or another by use of the check;
>
> 5.  This happened in New Mexico on or about 18th day of December, 1999.

*Record Proper* at 247-48.

The jury found Petitioner not guilty on Count 1, but found him guilty on Count 2.

## 1.  Parties Stipulated That Petitioner Gave The Checks

The parties stipulated that Petitioner wrote the checks to Adventure Travel in the

amounts stated and personally signed both of the checks.  They also stipulated to the date

the checks were written.  *See, e.g., Trial Transcript 5/18/04* at 64-64, 77-80, 76, 85-86, 182,

192.  Thus, the first and fifth elements of the charge were met.

### 2.  Sufficient Evidence Supports "Some Value" Element

To prove the second element of the charge, the prosecution was required to establish that Adventure Travel tendered goods of 'some value' in exchange for the worthless check. Petitioner argues that to obtain a conviction, the prosecution was required to prove that Petitioner actually used the Adventure Travel airline tickets in order to show that he obtained "some value" from them.  Petitioner states that "[t]he prosecutor failed to produce the copy of the used airline tickets to prove the required ['some value'] element for conviction as an issue of fact for the jury's determination." (Doc. 1 at 8). Petitioner further states that "without proof of something was obtained of equ[iv]alent value for the check there is legally insufficient evidence to support a conviction," and that "the state failed to produce any airline tickets what were used in exchange for the check. . ." (*Id.* at 11, 13).

Petitioner misperceives the nature of the crime.  The crime was complete when he gave Adventure Travel what he represented was a good check in exchange for the second set of tickets, knowing there were insufficient funds to cover the check.  The tickets had "some value" at the time of the exchange, regardless of whether they were used.

The fact that the prosecution did not introduce any used airline tickets at trial does not render the evidence insufficient.  Neither due process nor the sufficiency of the evidence standard under *Jackson* require any specific type of proof at trial to convict. Testimonial evidence, circumstantial evidence, or direct evidence, and the inferences to be drawn from such evidence alone can suffice.

> A reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." . . .  This conclusion is not altered by petitioner's argument that the evidence

was insufficient because there was no forensic evidence tying him to the crime.  "Lack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez,* 408 F.3d 672, 681 (10th Cir. 2005); *see also, O'Hara v. Brigano,* 499 F.3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler,* 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction.").

*Hale v. Davis,* 2009 WL 4666489 at * 17 (E.D. Mich. 2009).

Even if pecuniary benefit from use of the airline ticket was an element of the crime, there was sufficient evidence to establish that Petitioner used the ticket for his personal gain. On January 8, 2000, Petitioner obtained a $366.40 cashier's check from Citizen's Bank in Las Cruces payable to Adventure Travel after Mr. Mattiace undertook efforts to collect on both checks. However, Petitioner never sent the check to Adventure Travel. Petitioner instead faxed a copy of the cashier's check to Adventure Travel, and then cashed the check himself. Petitioner endorsed the check by writing "'not used for purposes intended.  Richard Kirby.'" *See Trial Transcript 5/18/04* at 126, 136-40, 150. Petitioner's undisputed purchase of the cashier's check for a portion of the second set of tickets is circumstantial proof that supports the conclusion that Petitioner obtained 'some value' from the airline tickets.

Thus, the evidence was sufficient to establish the second element for the charge on which the jurors convicted Petitioner.

### 3.  Sufficient Evidence Supports The Knowledge/Intent Elements

It appears that Petitioner is also challenging the sufficiency of the evidence for the third and fourth elements – the knowledge and intent requirements. To prove the third element, the state was required to establish that Petitioner knew that he did not have

sufficient funds or credit to pay the check in full at the time he wrote the check. To prove the fourth element, the state was required to establish  that Petitioner intended to cheat or deceive Adventure Travel by providing a worthless check.  Petitioner argues that the state did not introduce sufficient evidence to support either element.

Petitioner argued at trial that his accountant, Thomas Laws, had made several unauthorized withdrawals from Petitioner's checking account. Among other transactions, he wrote a check for $3,362.14 on October 29, 1999, and another on November 14, 1999 for $5,000.00. *Id.* at 170.  The defense claimed that Mr. Laws wrote these checks without Petitioner's authorization or knowledge and, that he did so before Petitioner wrote his checks to Adventure Travel. Petitioner argues that he did not know the account had insufficient funds and therefore he had no intent to deceive Adventure Travel.  *See, e.g., Id.* at 78-81 (defense counsel opening statement).

Counsel maintained this defense throughout his cross-examination of a First New Mexico bank official and in his direct examination of Mr. Laws. Mr. Laws was the sole defense witness. Both witnesses testified that Mr. Laws had made many withdrawals from the account, including the two that the defense claimed were the cause for the insufficient funds.  *See, e.g., Id.* at 164-74, 221-34.  Mr. Laws testified that he had not reconciled the bank statements when he wrote the checks at issue.  He also testified that he obtained specific authorization from Petitioner to write the checks.  He wrote them to repay himself for "accountant loans" he had made to Petitioner.  *See, e.g., Id.* at 234-39, 243-45, 250-56, 263-69.

Throughout the testimony of Mr. Laws and later in closing argument, defense counsel argued that there was an unprofessional or even criminal aspect to this

accountant/client business relationship.  For example, he asked questions about why Mr. Laws failed to produce certain financial documents, and whether he documented the loan arrangement he had with Petitioner. Counsel also elicited testimony that revealed questionable, or at least sloppy, billing and other practices. In his closing argument, defense counsel asked the jurors to consider why the prosecution had not called Mr. Laws as a witness.  *See, e.g., Id.* at 205-18, 232-50; *Trial Transcript 5/19/04* at 311-18.

Nevertheless, if the jurors believed the testimony of Mr. Laws regarding Petitioner's access to the checking account and Petitioner's responsibility for reconciling the checking account, then one inference they could permissibly draw was that Petitioner knew the account was overdrawn when he wrote the checks to Adventure Travel. Therefore, the testimony of Mr. Laws alone constituted sufficient evidence to establish the knowledge and intent elements.

Furthermore, the state introduced evidence that Petitioner had received repeated warnings of checks bouncing due to non-sufficient funds in the weeks prior to  his purchase of the airline tickets. The bank eventually closed the account because of "[r]epeated nonsufficient funds checks."  *See Trial Transcript 5/18/04* at 153-162, 175. According to documents in the federal record, there were over a dozen nonsufficient fund charges from November 30, 1999 to December 17, 1999.  (Doc. 11-1 at 47). The repeated notices of insufficient fund charges that occurred in the weeks before the Adventure Travel checks were written supplies additional circumstantial evidence of knowledge and intent. Therefore, the state supplied sufficient evidence to establish the knowledge and intent elements.

**4.      Sufficient Evidence Supports Trial Judge's Denial of Petitioner's
Motion for Acquittal**

Petitioner asserts that the "trial court should have granted Petitioner's judgment for acquittal" because "the state had offered no evidence the Petitioner knew that the checks were insufficient or that he intended to injure or defraud anyone."  (Doc. 1 at 16). Claims that are based solely in state law are generally not cognizable in federal habeas. This Court can only consider violations of federal law and the federal Constitution. State rulings on motions for judgment of acquittal are noncognizable claims because they are based on state law.[3]

However, even if the state law claim were cognizable, the trial judge's ruling on defense counsel's motion for a directed verdict was supported by sufficient evidence.  *See Trial Transcript 5/18/04* at 192.  The trial judge denied the motion, "find[ing] that there is sufficient evidence, viewed in the light most favorable to the State, to submit the charges to the jury."  *Id.*  That ruling encompasses all of the elements of the offense and, thus, should be entitled to AEDPA deference. Moreover, there is no clearly-established Supreme Court precedent to the contrary.

As discussed above, testimony about the numerous overdrafts and Petitioner's responsibility for reconciling the bank account was sufficient evidence of knowledge and intent. Thus, I find that the trial judge's ruling on defense counsel's motion for a directed

---

[3] *E.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Hillman v. Warden, Chillicothe Correctional Inst.,* 2009 WL 3126606 at * 21 (S.D. Ohio 2009) ("Petitioner's claim that the trial court improperly denied his motion for judgment of acquittal pursuant to Ohio Criminal Rule 29 presents an issue of state law that is not appropriate for federal habeas corpus review.").

verdict was supported by sufficient evidence.

## B. Prosecutorial Misconduct

In his Petition, Mr. Kirby claims that the prosecutors in his case engaged in multiple instances of misconduct. First, Petitioner claims that the prosecution violated *Brady v. Maryland* by failing to provide exculpatory evidence - namely the unused airline tickets. (Doc. 1 at 11, 13). Second, Petitioner claims that the prosecutor offered perjured testimony. (*Id.* at 13). Third, Petitioner claims that the prosecution engaged in misconduct during closing arguments. Specifically, Mr. Kirby alleges that the prosecutors vouched for the credibility of three witnesses and that they shifted the burden of proof by faulting the defense for not introducing certain pieces of evidence. (Doc. 1 at 13; Doc. 11-5 at 20-28).

### 1. Prosecutorial Misconduct Concerning Airline Tickets

Petitioner argues that the prosecutor's failure to produce the unused airline tickets at trial, as well as several other documents, was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Construing these claims liberally, Mr. Kirby argues that the prosecution was required to produce the airline tickets and a Las Cruces Police report because the tickets were "exculpatory" and the report revealed that fact. He asserts that the prosecution compounded the misconduct by shifting the burden to the defense for not introducing the airline tickets. Plaintiff raised these claims in his state habeas petition. He cited federal decisions and offered an affidavit from trial counsel in support of his claim.[4] Because the trial judge did not address these claims, this Court will review the claims *de novo.*

---

[4]*See Doc. 11-5* at 18-28, 35-37, 39-40 (citing *Arizona v. Youngblood,* 488 U.S. 51 (1988), *Brady v. Maryland,* 373 U.S. 83 (1963), and *Napue v. Illinois,* 360 U.S. 264 (1959)).

In general, unless conduct by the prosecutor violates a specific constitutional provision, prosecutorial misconduct is grounds for habeas relief only if the conduct rendered the trial fundamentally unfair.[5] While it is true that prosecutors have a constitutional duty to disclose exculpatory evidence, "[E]xculpatory evidence is only material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Snow v. Sirmons,* 474 F.3d 693, 711 10th Cir. 2007) (citing *United States v. Bagley,* 473 U.S. 667, 682 (1985)).

A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (same).

> "*Bagley*'s touchstone of materiality is a 'reasonable probability; of a different result, and the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Id.* (quoting *Kyles v. Whitley,* 514 U.S. 419, 434 (1995.  In determining whether the airline tickets are "material," this Court must

> review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case [and do so] in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist. What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict.

*Id.* (quoting *Banks,* 54 F.3d at 1518).

---

[5] *See, e.g., Smith v. Phillips,* 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"); *Patton v. Mullin,* 425 F.3d 788, 811 (10th Cir. 2005) ("When a defendant asserts claims of prosecutorial misconduct in a habeas petition, those claims are reviewed only for a violation of due process. . . . '[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice.").

Petitioner maintains that the airline tickets were "exculpatory" because he could not be convicted unless the prosecutor established that the tickets were "used."  With regard to the second set of tickets, the fact that any portion of the tickets was unused is immaterial to his conviction. This is so both because the crime was complete when he tendered the check in exchange for the tickets, and because there was sufficient evidence to conclude that at least a portion of the second set of tickets were used. *See, supra*, Section III(A)(3). For those reasons, the prosecutor's failure to provide copies of the 'used' airline tickets did not render the trial fundamentally unfair.

### 2.  Prosecutorial Misconduct Concerning Mr. Mattiace's Testimony

Another ground Petitioner raises for prosecutorial misconduct concerns an alleged threat made by Mr. Mattiace. Petitioner claims that Mr. Mattiace made a "bomb threat" while attempting to collect from Petitioner, and later discussed the same with Las Cruces police officer Ricky Madrid.  Specifically, Petitioner contends that Mr. Mattiace and an associate came to Mr. Kirby's office. When they left, they instructed the secretaries to "be sure to tell Mr. Kirby we left a bomb in his office." *Record Proper* at 455, 463. The defense wanted to use that evidence to impeach Mr. Mattiace. Mr. Mattiace denied making any threats towards Mr. Kirby or his employees and claimed that he never discussed any threats with Officer Madrid. *See Trial Transcript* at 93-99, 108-10, 114-16, 120-23.

Petitioner claims that Mr. Mattiace perjured himself at trial when questioned about the alleged bomb threat. Petitioner further claims that the prosecutor failed to provide Officer Madrid's police report to the defense, which purportedly would have corroborated Petitioner's claim. (Doc. 1 at 11); *Record Proper* at 282-86.  However, even if the threat had been made, it affords no grounds for habeas relief.

In general, unless conduct by the prosecutor violates a specific constitutional provision, prosecutorial misconduct is grounds for habeas relief only if the conduct rendered the trial fundamentally unfair. There is nothing "exculpatory" about the alleged "bomb threat" because that comment was allegedly made after the second check was given to Adventure Travel.  Thus, the introduction of any documentary or testamentary evidence concerning a threat made after the check was written was not relevant.  Second, the collection efforts by Mr. Mattiace are not a defense to the crime under New Mexico law. For those reasons, I find that Petitioner has failed to show that the prosecutor's conduct with regard to Mr. Mattiace's testimony rendered the trial fundamentally unfair.

### 3.  Prosecutorial Misconduct Concerning Closing Argument

Petitioner claims that the prosecution engaged in multiple acts of misconduct during closing arguments. Petitioner asserts that the prosecutor "vouched" for three witness, one of whom gave "perjured" testimony. According to the state petition, the "perjured" testimony referred to Mr. Mattiace's testimony denying any bomb threats and the impermissible "vouching" concerned the credibility of Mr. Mattiace, Mr. Laws, and the Citizen's bank vice employee.  (*See* Doc. 11-5 at 20-28; Doc. 1 at 13). Petitioner further argues that the prosecutor impermissibly shifted the burden of proof to the defense concerning the airline tickets.  With one exception noted below, the trial judge did not address these claims. This Court will review them *de novo.* (*See* Doc. 11-5 at 39-40).

### I. *The Prosecutor Did Not Vouch For The Credibility Of Any Witness.*

Petitioner asserts that during closing argument the prosecution "vouched" for the "credibility" of three witnesses by either commenting or suggesting that:  Mr. Laws had a "good reputation . . . never a traffic violation, never an ethics complaint, respectable

businessman, been there twenty years," *Doc. 11-5* at 25; Mr. Mattiace is the "Mayor of Las Cruces.  Very, [v]ery credible witness," *id.;* and the Citizen's bank official was "another very credible witness," *id.* Petitioner's claim has no merit.

Impermissible "vouching" occurs when the prosecution injects his or her personal views as to the credibility of a witness. *See, e.g., Douglas v. Workman,* 560 F.3d 1156, 190-91 (10th Cir. 2009); *Hawkins v. Mullin,* 291 F.3d 658, 675-76 (10th Cir. 2002).  Since "vouching" does not violate a specific constitutional right, it will not provide habeas relief unless it was both improper and so egregious as to have rendered Petitioner's trial fundamentally unfair. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 181 (1986); *Donnelly v. DeChristoforo,* 416 U.S. 637, 642-48 (1974). Even if the remark is "unfair" or "universally condemned," it is not a basis for habeas relief unless there is reason to believe it could have influenced the jury's verdict. *Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 642-43. In making that determination, the comments must be considered in the context of the entire trial, including closing arguments, jury instructions, and cautionary instructions given by the court.  *Bland v. Sirmons,* 459 F.3d 999, 1024 (10th Cir. 2006); *Jackson v. Shanks,* 143 F.3d 1313, 1322 (10th Cir. 1998); *Ross v. Parker,* 304 Fed. App'x 655, 658-659 (10th Cir. 2008); *Britt v. Embry,* 302 Fed. App'x 774, 780 (10th Cir. 2008).

The prosecution stated that a Citizen's bank official testified "about what happened to the cashier's check" and that "I don't think there is any evidence  that what she said was inaccurate" – that is, "defendant bought the traveler's check . . . and then went and cashed it and got the money for himself.  That's pretty undisputed." *Trial Transcript 5/19/04* at 298. He then said that Mr. Laws "has been a full-time CPA in Silver City since 1989 . . . never been charged with a crime, never had a complaint filed against him . . . never been

reprimanded or disciplined . . . got a spotless record as a CPA."  *Id.; Trial Transcript 5/18/04* at 137-39, 271.  Nowhere did the prosecutor refer to Mr. Mattiace as "mayor" or "credible."  *See Trial Transcript 5/19/04* at 287 ("Bill Mattiace"); *id.* at 289 ("Bill Mattiace"); *id.* at 297 ("Bill Mattiace"); *id.* at 298 ("Mr. Mattiace").

The prosecutor did not state or imply a personal opinion with regard to any witness. In fact, before discussing these witnesses' testimony, the prosecutor reminded the jurors of the instructions they had been read and said:

> . . . what I'd like to do is discuss some of the instructions in this case . . .
>
> . . . what the Judge told you was what the attorneys say . . . when we address you, is not evidence.  Your job is to determine and resolve this case based on the evidence presented, and what we tell you isn't evidence.
>
> We tell you what we think the evidence is going to show at the beginning, and we make referenced in closing to what the evidence you heard and what we think of it.  But what we say is not evidence . . .
>
> \* \* \* \* \*
>
> One of these instructions captures your job perfectly.  It says you are the sole judges of the facts in this case.   Basically, what happens is the judge resolves legal issues.  You resolve factual issues.
>
> You decide what to believe, and you decide what the evidence proves or doesn't prove.  And one of the instructions that's usually extremely helpful in that is the instruction that says[:]  You are the sole judges of the credibility of witnesses.  You decide who's telling the truth.  You decide what to believe based on the evidence.

*Trial Transcript 5/19/04* at 286-87. The prosecutor did not impermissibly "vouch" for any witness.  He made it clear that credibility determinations were solely the province of the jury. The prosecutor simply commented on the evidence.  This conclusion is supported by the entirety of the jury instructions, as well as remarks made by both the trial judge and the prosecutor.  *See, e.g., Record Proper* at 246, 250-51; *Trial Transcript 5/18/04* at 75; *Trial*

*Transcript 5/19/04* at 286.

The prosecutor made these comments, in these contexts:

Ladies and gentlemen, the defense rests on one principle. Tom Laws is their bogie man. They're blaming him for everything that Mr. Kirby did. They've got to find somebody to blame it on, so its his fault. They tried to bring a man who is a *respectable businessman* from that small community, who's been up there over 20 years, making a living in a small town. If you've never been in business, you know your reputation is what you make your living on. If you have a reputation of being a dishonest and a cheat, you aren't going to last, especially in a small town like Silver City.

But yet they've tried to come in here and disparage this man's good reputation to save the Defendant's hide. *You as a jury are here to decide the credibility of the witnesses.* There is no evidence whatsoever that's been presented that Tom Laws embezzled anything. That's what they're wanting to say, Oh, well, he had all this access to the account, and he was over there just siphoning money off, and Mr. Kirby didn't know it. And he was out writing checks, and he thought money was in the bank. But mean old Mr. Laws was over here writing, doing all this stuff and embezzling.

*Trial Transcript 5/19/04* at 333-34 (emphasis added). Later, he stated:

I want to go through with you very briefly some of the things that came from some of th witness that testified in court. We've got Bill Mattiace who came in. He's the mayor of Las Cruces. *Very, very credible witness.* He remembers seeing the defendant over at Adventure Travel. He remembers the defendant wrote him two bad checks. He went trying to collect the bad checks from the defendant. The defendant avoided him over at the Atrium Suites. He left messages.

At one point, the defendant faxes him a copy of a check. You can't go cash a copy of a check that somebody faxes you. You can't do that. You've got to have the real check. Well, it's like the old saying, the check's in the mail. It never showed up. No check means he didn't make it right. No actual check was ever there.

We talked to [the Citizen's Bank employee]. She's a vice-president of the Citizen's Bank. *Another very credible witness.* She took us through the faces of the checks that were written. She said it was a Texas driver's license on top that matched the defendant's driver's license number. The defendant's signature was on there. 'Not used for the purposes intended' was written right on there because he had taken that cashier's check over there to cash it.

*Id.* at 336-37 (emphasis added).

The prosecutor reminded the jurors that they alone were responsible for determining the credibility of the witnesses.  He did mention the word "credibility," however it was done in context of highlighting facts that were supported by the testimony.  *See, e.g., Trial Transcript 5/18/04* at 114-17, 137-39.  The description of Mr. Laws' practice and the use of the word "credible" was neither impermissible, nor did it render the trial fundamentally unfair.

## II. *The Prosecutor did Not Shift the Burden of Proof*

During closing argument, the prosecutor discussed the definition of proof beyond a reasonable doubt.  *See Trial Transcript 5/19/04* at 307-09.  Among other things, he urged the jurors to consider the evidence that was presented and the evidence that was not presented at trial.  The prosecution explained certain decisions: why they decided not to call Mr. Laws to testify; why they did not ask the bank witnesses to reconstruct the checking account transactions, *id.* at 310-11; why they did not introduce a copy of an investigation that showed that Mr. Laws was doing bookkeeping for Petitioner, *id.* at 314-17.  In the context of explaining those decisions, the prosecutor stated:

> [D]efense counsel talked about Mr. Tom Laws.  He seemed to think there was something very important about the fact that you should be aware of why we didn't call him as a witness.  If you remember, yesterday morning when I was voir diring you, I brought to your attention there could be a hundred witnesses.  It's my decision and [the other prosecutor's] decision which witnesses we call. . . .
> . . . We decided tactically not to call Mr. Laws.  That was our decision.  It had nothing to do with the evidence he was going to present.
> [Defense counsel] liked to talk at some length about all this evidence that was somehow missing, because after five years, people had forgotten things.  That's inevitable.  Not all these delays are the States's fault.  We have done everything in a prudent manner to get the proper evidence in front of you.
> He [defense counsel] says that it was so easy to produce all these documents that would have somehow exonerated Mr. Kirby.  *If it was so easy*

> *to produce these documents, why didn't he produce them?* That's all I've got
> to say.  If it was so dang easy to go down and —

*Id.* at 331-32 (emphasis added).  Defense counsel objected at that point on the ground that

the last statement "improperly shift[ed] the burden of proof."  *Id.* at 332.  The trial judge

instructed the jurors to "disregard that last statement."  *Id.* at 333.

On direct appeal, the Mexico Court of Appeals rejected the claim that the statement

was improper or rendered the proceedings fundamentally unfair, and held that the court's

instruction was sufficient to cure any error.  *See Record Proper* at 614-15.  The Court of

Appeals cited state decisions that do not follow federal standards concerning prosecutorial

misconduct but do discuss "fair trial."  Whether the decision is entitled to AEDPA deference

or not, the result is the same under a *de novo* or deferential review.

Contrary to what Petitioner argues, this comment did not address the missing plane

tickets, the production of which was immaterial for the reasons stated above.  Instead, the

prosecutor's remark was clearly in response to issues raised by the defense.  It did not shift

the "burden of proof" to the defense. The court gave an immediate curative instruction.

Thus, Petitioner fails to show that the fleeting remark "'directly affects a specific

constitutional right such as the presumption of innocence,'" much less that the

"constitutional guarantee was so prejudiced that it effectively amounted to a denial of that

right.'"  *Morris v. Workman,* 382 Fed. App'x 693, 696 (10th Cir. 2010) (quoting *Torres v.*

*Mullin,* 317 F.3d 1145, 1158 (10th Cir.), *cert. denied,* 540 U.S. 1035 (2003)).[6]  Therefore,

---

[6] *See also, e.g., United States v. Lopez-Terrazas,* 1995 WL 150576 at * 2 (10th Cir.
1995) ("Appellant argues that the prosecutor improperly characterized the government's burden
of proof beyond a reasonable doubt.  However, the prosecution's 'comment was isolated and
mitigated by the numerous instructions given by the court on the government's burden to prove
guilt beyond a reasonable doubt.' . . .  Considering all factors, we conclude that the prosecutor's
remark is not such a gross misstatement as to deprive the defendant of his right to a

the state decision is neither contrary to nor unreasonable under AEDPA and affords no basis for habeas relief.

The prosecutor made one other potentially objectionable comment that is related to Petitioner's "burden shifting" argument. After emphasizing the instruction that what counsel say is not evidence, the prosecutor stated that defense counsel "told you some things which were never shown by the evidence at all. You'll recall he told you that Bill Mattiace threatened the defendant. No witness ever testified to any such thing." *Trial Transcript 5/19/04* at 287.

This brief and fleeting comment falls into the same category as the comment discussed above. That is, it was uttered in the context of reminding the jurors that counsel's comments are not evidence. The comment did not shift the burden of proof. Moreover, it did not draw any objection from the defense. Therefore, this comment did not render the trial fundamentally unfair.

## C.  Ineffective Assistance Of Trial Counsel

Petitioner has asserted multiple claims of ineffective assistance of trial counsel and he asserts that the New Mexico Court of Appeals identified six areas where counsel was ineffective. Petitioner notes that defense counsel himself "acknowledged the deficient obligations and prejudicial deficiencies in an attached notarized affidavit." (Doc 1 at 5). Counsel's affidavit is based on the merits of issues already discussed: the alleged unused tickets, the alleged bomb threat, the Laws impeachment documents, the failure to subpoena Officer Madrid and the failure to produce Las Cruces police reports. (*See* Doc

---

fundamentally fair trial.") (quoting *United States v. Ellzey,* 936 F.2d 492, 497-98 (10th Cir.), *cert. denied,* 502 U.S. 950 (1991)).

1 at 5; Doc. 1-4 at 26-28). The trial judge considered Petitioner's ineffective assistance of counsel claims and rejected them. The trial judge cited the New Mexico Supreme Court decision *State v. Schoonmaker,* 143 N.M. 373, 176 P.3d 1105 (N.M. 2008), as the basis for his finding.  The *Schoonmaker* decision incorporates the controlling federal standards for prejudice under *Strickland,* 466 U.S. at 694 and *United States v. Cronic,* 466 U.S. 648, 658 (1984).[7]  The state decision is thus entitled to AEDPA deference for the prejudice prong of the *Strickland* analysis.

There is a unique interplay between ineffective assistance of counsel claims and the AEDPA. If there is "no Supreme Court precedent establishing the [ineffectiveness] rule" that a petitioner asserts, then a federal court "retreats to the general *Strickland* [*v. Washington*] standard."  *Crawley v. Dinwiddie,* 584 F.3d 916, 921-22 (10th Cir. 2009). Under the *Strickland* standard, a court first asks, considering the totality of the circumstances, whether the attorney provided reasonably effective assistance to his client. Second, the court will ask whether there is a reasonable probability that but for the attorney's incompetence, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to make either showing defeats the claim.  *E.g., Smith v. Robbins,* 528 U.S. 259, 285-86 & n.14 (2000); *Strickland,* 466 U.S. at 687. Petitioner has failed to make either showing in this case.

The first claim rejected in state court centered on loan documents never produced by Mr. Laws. While the trial court faulted defense counsel for failing to secure the

---

[7]  *Cronic* was decided the same day as *Strickland* and discusses the limited instances where the Court believed prejudice from counsel's ineffectiveness could be presumed. However, the ineffectiveness claims raised by Kirby are "plainly of the same ilk as other specific attorney errors [that are] held subject to *Strickland*'s performance and prejudice components." *Bell v. Cone,* 535 U.S. 685, 697-98 (2002).

documents, the trial court denied a motion to compel production on the ground that the "purported loan was only tangentially related to the primary issues before the jury." *See Record Proper* at 608. The Court of Appeals did not find the decision to be an abuse of discretion. *Id.* Based on the sufficiency discussion above, the state court did not unreasonably apply the prejudice prong.

Similarly, the Court of Appeals noted that defense counsel did not subpoena Officer Madrid or cite any authority on appeal for the proposition that the trial court erred in declining to grant a mistrial. *See id.* at 609-12. Nevertheless, for the all of the reasons mentioned above, neither the officer's testimony nor the police reports would have been material to the outcome. Therefore, the state court did not unreasonably apply the prejudice prong.

The New Mexico Court of Appeals likewise rejected a claim that defense counsel was ineffective for failing to discover impeachment evidence before trial. The evidence *consisted of an undated but purportedly post-trial affidavit by Mr. Laws where he stated that* he made a $3,000.00 loan to Petitioner "which was never repaid." See Record Proper at 620, 626. The evidence supposedly would have impeached Mr. Laws' testimony that Mr. Laws was paying himself out of Petitioner's checking account, rather than receiving money directly from Petitioner. (Doc. 11-8 at 34-35). The Court of Appeals held that counsel was not ineffective for failing to obtain this evidence since it "was more advantageous to Defendant for the loan to have been repaid, because that supported the defense theory that Mr. Laws had depleted the account, unbeknownst to Defendant." (Doc. 11-8 at 35). For the same reason, the court held that Petitioner had failed to show that he had been prejudiced by counsel's performance. (Id. at 37-38). This Court finds that the state court did

not unreasonably apply Strickland's prejudice prong.

Because Petitioner's ineffective assistance of counsel claims are all based on the sufficiency of the evidence and prosecutorial misconduct claims already discussed, I find that neither *Strickland* prong is met. At the very least, the trial and appellate courts court did not unreasonably apply the *Strickland* prejudice prong because there is no reasonable probability that the outcome would have been different.

## D.  Ineffective Assistance of Appellate Counsel

Mr. Kirby argues that his appellate counsel was constitutionally ineffective for failing to raise a number of issues on appeal. Petitioner claims that his appellate counsel was ineffective because "[a]n indigent criminal defendant has a right to have all issues raised by appointed appellate counsel" and, therefore, "[a]ppellate counsel was deficient for not raising:  Issue 1.  sufficiency of the evidence regarding the airline tickets on direct appeal and also the Motion to Modify or Reduce Sentence."  (Doc. 1 at 14). Petitioner further claims that appellate counsel was ineffective for failing to raise the prosecutorial misconduct issues. (Doc. 1 at 15) ("Appellate counsel was deficient for not raising . . . Issue 3.  the specifically requested discovery as *Brady* claims, and Issue 4:  the above prosecutorial misconduct claims.").

The same *Strickland* standards apply to claims of ineffective assistance of appellate counsel. *Robinson v. Maynard*, 829 F.2d 1501 (10th Cir. 1987). Namely, Petitioner must show that counsel's conduct was constitutionally deficient and that, but for the conduct, the result of the proceeding would have been different. *Strickland*, 466 U.S. 688 (1984).

Foremost, appellate counsel is not constitutionally required to raise every conceivable issue.  *E.g., United States v. Challoner,* 583 F.3d 745, 749-50 (10th Cir. 2009)

(citing *Smith v. Murray,* 477 U.S. 527, 536 (1985) and *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)); *Cargle v. Mullin,* 317 F.3d 1196, 1202 (10th Cir. 2003) (same).  Instead, appellate counsel is to "engage in a process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail."  *United States v. Cook,* 45 F.3d 388, 394 (10th Cir. 1995) (internal quotations and citations to *Smith,* 477 U.S. at 536 and *Jones,* 463 U.S. at 751-52, omitted).

Because the sufficiency and prosecutorial misconduct claims have no merit, appellate counsel's conduct cannot be considered deficient or prejudicial.  *See, e.g., id.* at 393; *Banks v. Reynolds,* 54 F.3d 1508, 1515 (10th Cir. 1995).  Lastly, any claim relating to Mr. Kirby's sentencing enhancement is moot given the prior disposition by the Tenth Circuit.

Accordingly, none of Petitioner's sufficiency of the evidence claims have any merit.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petition be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be**

**allowed.**

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE